IN THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARTHUR BOMAR, | : | |
| Petitioner, | : | CIVIL ACTION |
| v. | : | No. 2004-cv-1730 |
| JOHN E. WETZEL, Secretary, Pennsylvania Department of Corrections; ROBERT GILMORE, Superintendent of the State Correctional Institution at Greene; and STEVEN R. GLUNT, Superintendent of the State Correctional Institution at Rockview, | : : : : : | Honorable Juan R. Sanchez, U.S.D.J. **THIS IS A CAPITAL CASE** |
| Respondents. | | |

**PETITIONER'S MOTION TO ALTER AND AMEND JUDGMENT
AND CONSOLIDATED BRIEF**

Petitioner Arthur Bomar, through undersigned counsel, hereby moves pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to alter and amend the judgment entered by this Court on March 31, 2023. Petitioner states the following in support of the motion.

### INTRODUCTION

On March 31, 2023, this Court denied and dismissed the Petition for a Writ of Habeas Corpus in this capital case. *See* Mem. Op. (ECF No. 67), *Bomar v. Wetzel*, No. 04-cv-1730, 2023 WL 2761303 (E.D. Pa. March 31, 2023), and Order, ECF No. 68. The Court denied the entirety of Petitioner's nine (9) remaining claims, and it also denied a certificate of appealability (hereinafter "COA"). Mem. Op. 222; Order.

Rule 59(e) "was adopted to make clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment." *White v. N.H. Dep't of Employment Sec.*, 455 U.S. 445, 450 (1982). Reconsideration should be granted under Rule

59(e) if the moving party demonstrates "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Peterkin v. Horn*, 179 F. Supp. 2d 518, 520 (E.D. Pa. 2002) (granting Rule 59(e) motion).

For the reasons urged below, Petitioner respectfully requests that the Court reconsider its rulings on Claim IV (right to impartial jury violated where jury was tainted by prejudicial and extraneous information).

## LEGAL ARGUMENT

**THE COURT SHOULD RECONSIDER ITS DENIAL OF HABEAS RELIEF AND OF A CERTIFICATE OF APPEALABILITY ON PETITIONER'S CLAIM THAT PETITIONER'S RIGHT TO AN IMPARTIAL JURY WAS VIOLATED WHERE THE JURY WAS TAINTED BY PREJUDICIAL AND EXTRANEOUS INFORMATION.**

### A.     Factual and Procedural Background

Prior to trial, the trial court granted Petitioner's request for a change of venire. Petitioner's jury was selected from Westmoreland County, Pennsylvania. *See Commonwealth v. Bomar*, 104 A.3d 1179, 1186 n.1 (Pa. 2014). As a result, the jurors were brought to a hotel near the Delaware County Courthouse and were sequestered for more than two weeks. While sequestered, the jurors were guarded and escorted to the courthouse by law enforcement personnel. N.T. 10/20/09 at 8; Mertz Decl. ¶¶ 3-6, July 17, 2004 (PCRA Ex. P103).

During the PCRA proceedings, a member of the defense team spoke to juror Mertz and learned of a conversation that had taken place during the trial between Mr. Mertz and one of the law enforcement officers who were guarding and escorting the jury. Mertz Decl. ¶¶ 4-5. Juror Mertz had noticed that the law enforcement officers wore bullet proof vests and carried weapons.

*Id.* ¶ 3. He also recalled that on an occasion when the jurors were stuck in traffic, additional officers responded within 30 seconds and allowed their transport to pull across the median, noting his belief that the officers did not want the jurors to be "sitting ducks." *Id.* ¶ 6. Mr. Mertz "asked a deputy about the security and he told me that there had been a death threat against the jury by a gang from Philadelphia." *Id.* ¶ 5.

Relying on juror Mertz's declaration, Petitioner alleged that the deputy's statement was an extraneous and prejudicial influence on the jury that deprived him of his right to an impartial jury. Resp'ts' Ex. KK at 52, ¶ 119, ECF No. 47-28. An evidentiary hearing was granted on the claim, at which juror Mertz testified. Mr. Mertz confirmed that the conversation recounted in his declaration took place. NT 10/20/09 at 8-11.

The state courts reviewed the claim under state court precedent including *Commonwealth v. Sneed*, 45 A.3d 1096 (Pa. 2012), and *Carter by Carter v. U.S. Steel Corp.*, 604 A.2d 1010, 1016-17 (Pa. 1992), which require the defendant to establish a "reasonable likelihood of prejudice." *Bomar*, 104 A.3d at 1211. The state court concluded that there was no reasonable likelihood of prejudice from what it characterized as a "report of an isolated, vague, and general threat conveyed by a neutral law enforcement officer to a single juror." *Id.* at 1212. This Court essentially held that the state court hearing satisfied due process and that Petitioner had failed to show that the state court resolution of the claim was contrary to or an unreasonable application of clearly established federal law. Mem. Op. 118-19. It also commented that Petitioner would not be entitled to relief under *de novo* review and that Petitioner had failed to show a substantial and injurious influence on the jury's verdict. *Id.* at 119 n.75 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

### B. This Court Should Reconsider its Ruling Upholding the State Court's Denial of the Deprivation of an Impartial Jury Claim.

#### 1. The state court decision was contrary to or an unreasonable application of *Remmer* and its progeny.

In its decision, this Court focused on attempting to show that there is no clearly established Supreme Court precedent for applying a presumption of prejudice to the type of extraneous influence claim involved here. Mem. Op. 111-18. That attempt, however, is called into question by recent precedent.

In *Cunningham v. Shoop*, 23 F.4th 636 (6th Cir. 2022), in which the court found that the state court had unreasonably applied federal law to a claim of juror bias, the court wrote that *Remmer v. United States*, 347 U.S. 227 (1954), provides the governing clearly established law:

> In *Remmer*, the Supreme Court held that a prima facie showing of juror bias—such as an allegation of "any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury" in a criminal case—entitles a defendant to a hearing, awards to the defendant a presumption of prejudice, and places on the Government the burden of showing that the contact was harmless.

*Cunningham*, 23 F.4th at 648 (quoting *Remmer*, 347 U.S. at 229).

With respect to whether the subsequent decision in *Smith v. Phillips*, 455 U.S. 209 (1982), altered the clearly established law of *Remmer*, the *Cunningham* court noted that every circuit other than the Sixth Circuit "maintains that the Government shoulders the burden at a *Remmer* hearing of showing that the alleged juror bias was harmless and has reaffirmed that defendants are awarded a presumption of prejudice at that hearing." 23 F. 4th at 648-49 (citations omitted). *See also Hall v. Zenk*, 692 F.3d 793, 802 (7th Cir. 2012) (affirming that "the *Remmer* presumption is clearly established federal law as defined by AEDPA"). This nearly unanimous view of the circuits should be taken as setting forth the clearly established law governing claims of this type.

It is undisputed that the state courts did not award Petitioner a presumption of prejudice at the *Remmer* hearing. Rather, the state courts required Petitioner to establish a "reasonable likelihood of prejudice." *Bomar*, 104 A.3d at 1211. Because the state courts did not provide the presumption of prejudice, the state court decision was contrary to or an unreasonable application of *Remmer*. *See Hall*, 692 F.3d at 803.

Even if it is assumed, however, that requiring Petitioner to show a "reasonable likelihood of prejudice" is consistent with *Remmer*, the state court's application of that standard was itself unreasonable. The state court asserted that there was no likelihood of prejudice because (1) the "threat was vague," or "generic," (2) its origins were "unknown," i.e., there was no proof that Mr. Bomar or "'his people' were the source of the threat," and (3) "it was conveyed by a sheriff's deputy to a single juror, rather than communicated directly to the jury from the source of the threat, thus minimizing its inflammatory nature." *Bomar*, 104 A.3d at 1211-12. The assertion by the state court that these aspects of the threat minimize or eliminate the likelihood of prejudice was unreasonable.

First, it was unreasonable to call the threat "vague" or "generic." The deputy told juror Mertz "that there had been a death threat against the jury by a gang in Philadelphia." Mertz Decl. ¶ 5. There is nothing vague about the term "death threat." Moreover, the circumstances recounted by juror Mertz confirm that law enforcement took this threat seriously. Juror Mertz recalled that the law enforcement personnel were all armed and wore bullet proof vests. *Id.* ¶ 3. Furthermore, juror Mertz observed that when the jurors were caught in heavy traffic, law enforcement got them out of the traffic jam by driving across the median. This led juror Mertz to comment: "They made sure we weren't sitting ducks." *Id.* ¶ 6. And the deputy told juror Mertz about the threat in response to juror Mertz's question concerning the reason for the heightened security. *Id.* ¶ 4. The

conversation itself and the other circumstances convinced juror Mertz that the law enforcement officers took the death threat against the jury seriously.

The fact that the external contact involved a threat raises the stakes considerably. The effect of a threat on jurors must be carefully scrutinized. For example, in *United States v. Angulo*, 4 F.3d 843 (9th Cir. 1993), a juror received a telephone call at home, in which the caller said, "'I know where you live.'" *Id.* at 846. The juror asked other jurors if they had received such a call; none had. *Id.* The court excused the threatened juror, noting that "'the most logical activity for you to tie [the threat] up with is jury duty.'" *Id.* at 847. The court of appeals held that the trial court's failure to hold a hearing regarding the effect of the threat on the other jurors—who had not been recipients of the threat—violated *Remmer*. *Id.* at 847-48.

Second, while it is true that there was no evidence as to the source of the threat, that fact is irrelevant. While it is not inconceivable that there could be some other reason for a Philadelphia gang to threaten the jurors, the likely and immediate supposition for anyone hearing of such a threat would be that it was instigated by or on behalf of Mr. Bomar. Of course, the instigation of such a threat would be strong evidence of consciousness of guilt and that the instigator was a particularly dangerous person, one who sought to perpetrate or threaten violence even after his arrest. *See Angulo*, 4 F.3d at 847 (where jurors were made aware of a threat to another juror, "the remaining jurors may well have believed that defendants were responsible for the threat and, based on that assumption, may have decided the merits of the case on that basis.").

Third, neither the fact that the threat was communicated by a deputy, rather than directly, nor the fact that it was communicated to a single juror minimizes its significance. The relationship between Mertz and the deputy "was one which could not but foster [juror Mertz's] confidence in those who were [his] official guardians during the entire period of the trial." *Turner v. Louisiana*,

379 U.S. 466, 474 (1965). *Accord Parker v. Gladden*, 385 U.S. 363, 365 (1966) ("the official character of the [deputy] . . . beyond question carries great weight with a jury"). And even if only juror Mertz was affected by the deputy's statement, there is a Sixth Amendment violation: "[P]etitioner was entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors." *Parker*, 385 U.S. at 366.

Furthermore, exposure to the extraneous evidence of a threat was prejudicial at capital sentencing as well as at the guilt phase of the trial. The deputy's statement, which obviously was not in evidence or subject to cross-examination, suggested that Mr. Bomar was an extremely dangerous and threatening person, including to the jurors themselves. Consideration of a defendant's future dangerousness is "inevitable" in capital sentencing. *Skipper v. South Carolina*, 476 U.S. 1, 5 (1986). The untested, out-of-court evidence suggesting that Mr. Bomar would be a danger in the future was prejudicial at capital sentencing.

### 2. *De novo* review and *Brecht*

In a footnote, this Court indicated that it would have denied relief even under *de novo* review, and that in any event Mr. Bomar could not show that the alleged error "had substantial and injurious effect or influence in determining the jury's verdict." Mem. Op. 119 n.75 (quoting *Brecht*, 507 U.S. at 623). Petitioner urges the Court—following reconsideration of its AEDPA analysis—to reconsider the suggested alternative rulings.

This Court did not describe the reasons why it would have denied relief under *de novo* review. Given its analysis of the state court decision, presumably this Court would rule either that there is no presumption of prejudice or that any presumption would be rebutted, and that the extraneous contact was not harmful under all of the circumstances. The discussion above not only shows that the state court decision was at best unreasonable, it also refutes any attempt to minimize

what took place. In particular, the facts that the extraneous contact involved a threat, that all of the circumstances convinced juror Mertz that the threat was taken seriously by law enforcement, and that the juror who was informed of the threat believed it to be real but still served on the jury preclude any determination that the juror's exposure to out-of-court evidence about the existence of the threat was anything but prejudicial. Notably, the Commonwealth never made any effort to show that juror Mertz was not affected by his exposure to the threat.

*Brecht* holds that for most types of constitutional errors, a habeas petitioner must show, in addition to a constitutional error, that the error in question "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623. The *Brecht* framework is difficult to apply in this context because *Remmer* apples a presumption of prejudice, and at a minimum requires showing a reasonable likelihood of prejudice. Thus, the harm from the violation is inherent in establishing that there is in fact a violation. Despite these obvious problems, the majority view seems to be that both "the *Remmer* presumption and the *Brecht* test . . . must be applied." *Boode v. Johnson*, No. C-13-2438, 2015 WL 1967089, at *15 (N.D. Cal. May 1, 2015). For either of two reasons, that position should be rejected.

First, once *Remmer* error is established, it is structural error. While not every extraneous contact with a juror violates *Remmer*, once a violation is established, the error is structural because "the effects of the error are simply too hard to measure." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1908 (2017). After all, Federal Evidence Rule 606 and similar state rules preclude asking jurors whether or how exposure to extraneous evidence affected their deliberations. And the *Brecht* framework does not apply to "the rare type of error that requires automatic reversal." *Davis v. Ayala*, 576 U.S. 257, 267 (2015) (citation and internal quotation marks omitted). Because the error is structural, *Brecht* does not apply.

8

Second, the *Remmer* standard contains its own materiality requirement. Prejudice is presumed; if the Government cannot rebut the presumption of prejudice there is a violation. This makes a *Remmer* violation similar to violations of *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). The Third Circuit has held that *Brecht* is subsumed within the materiality standards for *Brady* and *Giglio* violations. *Haskell v. Sup't Greene SCI*, 866 F.3d 139, 148-50 (3d Cir. 2017). The same should be true for *Remmer* violations.

Even if *Brecht* applies, however, Petitioner satisfies the *Brecht* standard. Under *Brecht*, habeas "relief is appropriate only if the prosecution cannot demonstrate harmlessness." *Ayala*, 576 U.S. at 267. Here, the Commonwealth has made no effort to demonstrate harmlessness. Mr. Bomar, however, has shown a *Remmer* error that resulted in at least a reasonable likelihood of prejudice. Because the prosecution has not satisfied its burden to show that the *Remmer* error did not deprive Mr. Bomar of his right "to be tried by 12 . . . unprejudiced jurors," *Parker*, 386 U.S. at 366, Mr. Bomar should be granted habeas relief.

**C.      This Court Should Reconsider Its Denial of COA.**

A COA must be granted if the issue is "debatable among jurists of reason"; "a court could resolve the issue[] [in a different manner]"; or "the question[] [is] adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983); *see Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (*Barefoot* standard continues to apply under AEDPA). Thus, at the COA stage,

> the only question is whether the applicant has shown that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."

*Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).

9

This Court denied a COA without any further analysis of this claim. Mem. Op. 222. The discussion above shows that, at a minimum, jurists of reason could disagree with this Court's denial of relief on this claim. Accordingly, this Court should grant a COA.

## CONCLUSION

For all of the reasons set forth herein, this Court should reconsider its decision on the merits of Claim IV or at least grant COA.

Respectfully submitted,

/s/ Jennifer Chiccarino
JENNIFER CHICCARINO
KATHERINE E. ENSLER
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut St., Suite 545W
Philadelphia, PA 19106
215-928-0520
jennifer_chiccarino@fd.org
katherine_ensler@fd.org


*Counsel for Petitioner*

Dated: April 28, 2023

## CERTIFICATE OF SERVICE

    I, Jennifer Chiccarino, hereby certify that on this 28th day of April, 2023, I served a copy of the foregoing petition upon the following by ECF, as well as United States Mail, first class, postage prepaid:

Catherine B. Kiefer, Esq.<br>
Deputy District Attorney<br>
Office of the Delaware County District Attorney<br>
Delaware County Courthouse<br>
201 West Front Street<br>
Media, Pennsylvania 19063

        /s/ Jennifer Chiccarino
        JENNIFER CHICCARINO