IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARTHUR BOMAR | : | CIVIL ACTION |
| | : | |
| v. | : | No. 04-1730 |
| | : | |
| JOHN E. WETZEL, Secretary, | : | **THIS IS A CAPITAL CASE** |
| Pennsylvania Department of Corrections, | : | |
| et al. | : | |

<u>**MEMORANDUM**</u>

**Juan R. Sánchez, J.**                                                    **April 5, 2024**

Petitioner Arthur Bomar moves for reconsideration of this Court's denial of habeas relief and a certificate of appealability on his claim that his right to an impartial jury under the Sixth and Fourteenth Amendments was violated because a juror was exposed to prejudicial extraneous information. Because Bomar has not shown the Court committed clear legal error in evaluating this claim, the motion will be denied.

**BACKGROUND**

The details regarding this claim and its presentation to the state courts are set forth in the Court's Memorandum denying Bomar's habeas petition and are repeated here only briefly. In July 2004, nearly six years after the trial in this case, juror William Mertz signed a declaration stating that, at some point during the two-week trial, he asked one of the deputies guarding the jury about the security in the case and was told "there had been a death threat against the jury by a gang in Philadelphia." Mertz Decl. ¶ 5, July 17, 2004 (PCRA Ex. P103).[1] Mertz testified briefly at a PCRA hearing in 2009 and confirmed that he had a conversation with a law enforcement officer

---

[1] Due to extensive pretrial publicity about the case, the trial court granted a defense motion for a change of venue. As a result, the jurors were selected in Westmoreland County and brought to Delaware County, where they were sequestered in a hotel, under the protection of two deputies and two court officers, for the duration of the trial. *See* Mertz Decl. ¶ 3.

regarding the amount of security around the jury, during which "there was a mention of threats towards the jury." N.T. 10/20/09 at 8.

The state courts rejected Bomar's claim that Mertz's exposure to this extraneous information from a law enforcement officer violated his right to an impartial jury and due process, finding Bomar had not met his burden of proving the deputy's statement caused a reasonable likelihood of prejudice.[2] *See Commonwealth v. Bomar*, 104 A.3d 1179, 1211-12 (Pa. 2014).

Bomar renewed this claim in his federal habeas petition, but this Court also rejected it. In denying relief, the Court found that by holding a hearing on Bomar's extraneous influence claim, the state court satisfied due process. The Court also concluded Bomar had not shown the state court's denial of the claim was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, either insofar as it placed the burden on Bomar to show the extraneous influence caused a reasonable likelihood of prejudice or insofar as it found Bomar had failed to meet this burden. Finally, the Court noted relief would not be warranted under de novo review and because Bomar had not demonstrated any error had a substantial and injurious effect or influence in determining the jury's verdict under *Brecht v. Abrahamson*, 507 U.S. 619 (1983). It also denied a certificate of appealability.

Bomar now asks this Court to reconsider its denial of habeas relief on his extraneous influence claim pursuant to Federal Rule of Civil Procedure 59(e), arguing the Court erred in concluding that (1) clearly established federal law did not require the state courts to award him a

---

[2] Although Bomar claimed violations of his federal constitutional rights under the Sixth and Fourteenth Amendments, he argued the state-law case of *Carter v. U.S. Steel Corp.*, 604 A.2d 1010 (Pa. 1992), which requires the moving party to show a reasonable likelihood of prejudice, supplied the applicable test. *See* Resp'ts' Ex. VV at 62, ECF No. 47-42 (arguing the PCRA court, which applied *Carter*, "identified the correct standard for determining whether a reasonable likelihood of prejudice exists" but misapplied that standard).

presumption of prejudice at the PCRA hearing on this issue; (2) the state court's application of the "reasonable likelihood of prejudice" standard was reasonable; and (3) any error by the state court was harmless under *Brecht*.  He also argues the Court should reconsider its denial of a certificate of appealability as, at a minimum, jurists of reason could disagree with the Court's denial of relief. The Commonwealth opposes the motion, arguing Bomar has set forth no legitimate basis for reconsideration but simply asks the court to rethink what it has already thought through.

**DISCUSSION**

"The scope of a motion for reconsideration . . . is extremely limited."  *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011).  Rule 59(e) "permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'"  *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2810.1, pp. 127-28 (2d ed. 1995) (footnotes omitted)); *see also Blystone*, 664 F.3d at 415 (holding motions for reconsideration "are not to be used as an opportunity to relitigate the case").  Rather, "[a] proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice."  *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010).

Bomar first argues the Court should reconsider its conclusion that clearly established federal law did not require the state courts to award him a presumption of prejudice, noting the Sixth Circuit's decision in *Cunningham v. Shoop*, 23 F.4th 636 (6th Cir. 2022), calls the Court's analysis into question.  In *Cunningham*, discussing the Supreme Court case law relevant to extraneous influence claims, the Sixth Circuit began with *Remmer v. United States*, 347 U.S. 227 (1954), characterizing that case as holding

3

a prima facie showing of juror bias—such as an allegation of "any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury" in a criminal case—entitles a defendant to a hearing, awards to the defendant a presumption of prejudice, and places on the Government the burden of showing that the contact was harmless.

23 F.4th at 648 (quoting *Remmer*, 347 U.S. at 229). The court in *Cunningham* also discussed the Supreme Court's later decision in *Smith v. Phillips*, 455 U.S. 209 (1982), noting the Sixth Circuit had previously interpreted *Phillips* to have "shifted the burden of showing bias at *Remmer* hearings to defendants and stripped defendants of the presumption of prejudice." *Id.* at 649. The court suggested, however, that in so holding, the Sixth Circuit had "charted [its] own course," as "[e]very other circuit maintains that the Government shoulders the burden at a *Remmer* hearing of showing that the alleged juror bias was harmless and has reaffirmed that defendants are awarded a presumption of prejudice at that hearing." *Id.* at 648-49. Relying on *Cunningham*, Bomar now argues that *Remmer* provides the clearly established federal law governing his extraneous influence claim and that the "nearly unanimous view of the circuits" that a defendant is entitled to a presumption of prejudice at a *Remmer* hearing "should be taken as setting forth the clearly established law governing this type of claim." Mot. to Alter & Amend 4, ECF No. 69.

As the Commonwealth notes, *Cunningham*, a Sixth Circuit case, does not represent an intervening change in the controlling law. Nor does the case show clearly established federal law required a presumption of prejudice in this case. For starters, the case demonstrates the existence of a circuit split on the continuing vitality of *Remmer*'s presumption of prejudice—assuming the presumption is (or was) constitutionally required.[3] Moreover, while the Sixth may be the only

---

[3] As noted in the Court's earlier analysis of this claim, *Remmer* was not a habeas case but a federal criminal case, and the Supreme Court's opinion in the case "did not clarify whether a presumption of prejudice must apply at a state-court hearing, i.e., if it is based in the Constitution rather than in federal supervisory law alone." Mem. 112-13, Mar. 31, 2023, ECF No. 67. This feature of *Remmer* has led some courts to question whether the decision is constitutionally based. *See, e.g.,*

circuit to hold that *Phillips eliminated* the presumption, other circuits have recognized that the presumption has been altered by later cases.  For example, the Fifth Circuit has held "the *Remmer* presumption of prejudice cannot survive *Phillips* and [*United States v. Olano*, 507 U.S. 725 (1994)]."  *United States v. Sylvester*, 143 F.3d 923, 934 (5th Cir. 1998).  Rather, in that circuit, "the trial court must first assess the severity of the suspected intrusion," and "only when the court determines that prejudice is likely should the government be required to prove its absence."  *Id.* The D.C. Circuit has interpreted *Phillips* and *Olano* as having "narrow[ed]" and "reconfigure[d] the *Remmer* presumption such that a trial court must "inquire whether any particular intrusion showed enough of a 'likelihood of prejudice' to justify assigning the government a burden of proving harmlessness."  *United States v. Williams-Davis*, 90 F.3d 490, 496-97 (D.C. Cir. 1996). And the First Circuit has suggested *Remmer*'s holding has been "cabined" by *Phillips* and *Olano* and the presumption of prejudice applies "only where there is an egregious tampering or third party communication which directly injects itself into the jury process."  *United States v. Bradshaw*, 281 F.3d 278, 287 (1st Cir. 2002) (quoting *United States v. Boylan*, 898 F.2d 230, 261 (1st Cir. 1990)).

While Bomar argues the "nearly unanimous view of the circuits" should be accepted as clearly established law, circuit case law reflects considerable disagreement as to whether and when the presumption applies.  As Bomar notes, some circuits have held "the *Remmer* presumption is clearly established federal law as defined by AEDPA."  Mot. to Alter & Amend. 4, ECF No. 69

---

*Crease v. McKune*, 189 F.3d 1188, 1193 (10th Cir. 1999) ("We view the *Remmer* presumption as a rule of federal criminal procedure, rather than a rule of federal constitutional law."); *Young v. Herring*, 938 F.2d 543, 558 n.7 (5th Cir. 1991) (characterizing *Remmer* as a case in which the Supreme Court "was exercising its supervisory powers over the lower federal courts rather than ruling on the Constitution"); *Von Tobel v. Benedetti*, No. 10-73, 2018 WL 2024611, at *13 n.28 (D. Nev. May 1, 2018) (questioning the extent to which the burden-shifting analysis of *Mattox v. United States*, 146 U.S. 140 (1892), and *Remmer* is constitutionally compelled, given that both *Mattox* and *Remmer* were federal criminal cases).

(quoting *Hall v. Zenk*, 692 F.3d 793, 802 (7th Cir. 2012)).[4, 5]   But other courts have suggested that, given this disagreement, a state court's failure to apply a presumption is not necessarily contrary to or an unreasonable application of clearly established federal law.   *See Teniente v. Wyo. Att'y Gen.*, 412 F. App'x 96, 105 (10th Cir. 2011) (holding Tenth Circuit's continued adherence to the *Remmer* presumption does not mean state court's failure to apply it was contrary to or an unreasonable application of clearly established federal law, as state court could reasonably have "question[ed] the appropriate breadth" of the presumption and "postulat[ed] [that] the standard should be significantly narrowed, or replaced altogether," in light of the "significant number of federal courts that have done just that" (third alteration in original) (citation omitted)); *Tunstall v. Hopkins*, 306 F.3d 601, 611 (8th Cir. 2002) ("When the federal circuits disagree on the application of *Remmer* regarding any presumption of prejudice, it is difficult to say the [state] court's decision

---

[4] In *Hall*, recognizing "there has been much debate" on *when* the *Remmer* presumption applies, the Seventh Circuit clarified that "what seems to be 'clearly established' is that federal constitutional law maintains a presumption of prejudice in at least some intrusion cases."  *Hall*, 692 F.3d at 803.  The court then found the particular intrusion at issue—a juror's communication with her son, a fellow inmate of the defendant, concerning the son and several of their co-inmates' opinions of the defendant's guilt—fell "close enough to the facts of *Remmer* to easily earn a presumption of prejudice," even under a narrow reading.  *Id.* at 805-06.

[5] The Third Circuit has held that the Supreme Court in *Phillips* "did not reject *Remmer*'s presumption of prejudice."  *United States v. Console*, 13 F.3d 641, 666 (3d Cir. 1993).  And it has continued to apply a presumption of prejudice—at least in direct appeal cases—though "only when the extraneous information is of a considerably serious nature."  *United States v. Lloyd*, 269 F.3d 228, 238 (3d Cir. 2001) ("In particular, we have tended to apply the presumption of prejudice when a juror is directly contacted by third-parties.").  However, the court has not specifically addressed whether and to what extent the presumption constitutes clearly established federal law for purposes of AEDPA in a precedential opinion.  *But cf. Henderson v. Diguglielmo*, 138 F. App'x 463, 467 n.5 (3d Cir. 2005) (acknowledging *Remmer* presumption in a habeas case).

[which failed to apply a presumption] is contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.").[6]

Given the divergent views of the circuits on this issue, the Court declines to reconsider its conclusion that clearly established federal law did not require the state courts to award Bomar a presumption of prejudice in this case.

Bomar also argues reconsideration is warranted because even if requiring him to establish a reasonable likelihood of prejudice was not contrary to or an unreasonable application of clearly established federal law, the state court's application of this standard was unreasonable in and of itself. In rearguing this point, Bomar improperly seeks to raise new arguments that could have been made before the Court denied his habeas petition. His arguments are also unpersuasive as he

---

[6] Moreover, even if clearly established federal law requires a presumption of prejudice in some instances, the Ninth Circuit has observed that "neither *Mattox* nor *Remmer* precisely delineates" what a petitioner must show to trigger it. *Von Tobel v. Benedetti*, 975 F.3d 849, 855 (9th Cir. 2020). At issue in *Von Tobel* was the state court's rejection of a juror misconduct claim under a state-law test that, except in cases of egregious misconduct, required the defendant to show "a reasonable probability or likelihood that the juror misconduct affected the verdict." *Id.* at 853 (quoting *Meyer v. State*, 80 P.3d 447, 456 (Nev. 2003)). The petitioner argued the state-court test was contrary to or an unreasonable application of clearly established federal law because it "placed a more onerous burden on him to prove prejudice than under the applicable Supreme Court precedent and . . . did not presume the contact [at issue] was prejudicial." *Id.* at 851. The Ninth Circuit rejected the claim. The court noted it had previously interpreted the *Mattox*/*Remmer* framework to require a presumption of prejudice when a petitioner presents evidence of an external contact that was "possibly prejudicial." *Id.* at 855 (citation omitted). Under circuit precedent, this required the petitioner "to present 'evidence of an external contact that has a tendency to be injurious to the defendant' or 'evidence of a contact sufficiently improper as to raise a credible risk of affecting the outcome of the case.'" *Id.* (quoting *Godoy v. Spearman*, 861 F.3d 956, 967 (9th Cir. 2017) (en banc)). But *Mattox*, the relevant Supreme Court precedent, by contrast, "does not make clear how much of a 'tendency . . . [to be] injurious to the defendant' is required; that is, how certain or likely prejudice has to be for the defendant to meet his burden." *Id.* at 856 (quoting *Mattox*, 146 U.S. at 150). Given the lack of clearly established Supreme Court precedent on point, the court held the burden on the defendant under the state court's "reasonable probability or likelihood" of prejudice test "f[e]ll[] within the range allowed by Supreme Court precedent." *Id.* Notably, the Pennsylvania courts applied a "reasonable likelihood of prejudice" standard in this case.

has not shown the state court's ruling on this issue "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," as required to obtain habeas relief. *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

In state court, Bomar argued the deputy's statement to juror Mertz about the threat was prejudicial because it "would certainly be accepted by an objective juror that [Bomar] or his people could harm the jury," and would be regarded as evidence of Bomar's "character, dangerousness, and propensity for violence" in a case in which he was charged with a violent rape and murder. Resp'ts' Ex. VV at 63, ECF No. 47-42. The state court rejected this argument, noting there was no evidence "it was suggested that [Bomar] or 'his people' were the source of the threat." *Bomar*, 104 A.3d at 1211-12 (Pa. 2014). Bomar argues the lack of evidence as to the threat's source is irrelevant as the "likely and immediate supposition for anyone hearing of such a threat would be that it was instigated by or on behalf of Mr. Bomar." Mot. to Alter & Amend 6, ECF No 69. But the state court's contrary conclusion was reasonable. While the deputy suggested the threat came from "a gang in Philadelphia," Mertz Decl. ¶ 5, an objective typical juror would have had no reason to believe Bomar was associated with a gang. There was no evidence Bomar was part of a gang. And nothing about the crime suggested a conspiracy or other concerted criminal action, much less a gang affiliation. On the contrary, the prosecution's theory was that Bomar had acted alone. Notably, there is no evidence Mertz understood the threat to have been connected to Bomar or anyone associated with him.

Bomar also takes issue with the state court's conclusion that the threat's inflammatory nature was minimized because it was vague, of unknown origin, and "conveyed by a sheriff's deputy to a single juror, rather than communicated to the juror directly from the source of the threat." *Bomar*, 104 A.3d at 1212. But here, too, the court's analysis was reasonable. While

8

Bomar maintains it was unreasonable to call the report of a death threat "vague," as the state court observed, the deputy's statement included no specifics regarding the threat, such as when it was made, how and by whom it was communicated, or what it said. *See id.*[7]

Bomar also argues it was unreasonable to conclude the fact that the threat was communicated by a deputy, rather than directly from the source of the threat, served to minimize its significance, given the deputy's role as an "official guardian" of the jurors during trial. *See Turner v. Louisiana*, 379 U.S. 466, 474 (1965) (noting the relationship between jurors and deputies who were continuously in their company throughout a three-day trial "was one which could not but foster the jurors' confidence in those who were their official guardians during the entire period of the trial"). But even if the deputy's relationship to Mertz enhanced his credibility, this is not a case where the deputy offered an opinion as to Bomar's guilt or provided testimony against him. *Cf. Parker v. Gladden*, 385 U.S. 363, 363-65 (1966) (bailiff's statement to jurors that defendant was guilty and that even if the jury were to make a mistake in finding him guilty, the Supreme Court would correct it were prejudicial); *Turner*, 379 U.S. at 473-74 (permitting deputies who were the lead witnesses at trial to serve as jurors' "official guardians" throughout trial was prejudicial). An objective typical juror may have regarded the deputy as a credible source of information about the threat. Even so, it is reasonable to conclude that learning of the existence of a threat from security personnel, who, by Mertz's account, kept the jurors well protected during

---

[7] In arguing it was unreasonable to call the threat vague, Bomar notes the circumstances recounted by juror Mertz regarding the security in the case showed law enforcement took the threat seriously. But the case was already one in which there was a need for security around the jury, which was sequestered for reasons unrelated to any threat. *See* Mertz Decl. ¶ 4 (acknowledging jurors knew this "was a high publicity case," though Mertz "didn't think that would be a reason for *all* the security" (emphasis added)). The fact that law enforcement may have taken additional security measures in response to a reported threat seems unremarkable and certainly makes it no more likely that the threat came from Bomar.

their service, *see* Mertz Decl. ¶ 3, as opposed to receiving it directly from the source, minimized its inflammatory potential.

Bomar further argues it is irrelevant that the threat was communicated only to a single juror, as he "was entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors." Mot. to Alter & Amend 7, ECF No. 69 (quoting *Parker*, 385 U.S. at 366). While Bomar is undoubtedly correct that even a single biased juror would be enough for a constitutional violation, courts have recognized that "the extent of the jury's exposure to the extraneous information" is relevant to the prejudice inquiry. *United States v. Fumo*, 655 F.3d 288, 307 (3d Cir. 2011) (citation omitted). It is thus reasonable to conclude that the fact that the threat was mentioned only briefly to a single juror served to minimize the risk of prejudice, particularly given the lack of any evidence the threat was relayed to any other jurors or discussed among them.

Bomar again has not shown the state court unreasonably applied clearly established federal law in concluding the deputy's statement to Mertz about the threat did not cause a reasonable likelihood of prejudice.[8]  Nor has he established a reason for this Court to reconsider its rejection of this claim. The Court therefore declines to consider its earlier ruling on this issue as well.

Bomar next asks the Court to reconsider its alternative ruling that relief is not warranted because any error was harmless under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). As Bomar notes, "*Brecht* holds that for most types of constitutional errors, a habeas petitioner must show, in addition to a constitutional error, that the error in question 'had substantial and injurious effect or influence in determining the jury's verdict.'" Mot. to Alter & Amend 8, ECF No. 69 (quoting *Brecht*, 507 U.S. at 623). Although the Third Circuit has not addressed the issue, six other circuits

---

[8] Indeed, even on de novo review, this Court would reach the same conclusion for the reasons set forth above.

10

have held the *Brecht* harmless-error standard applies to extraneous influence claims.  *See Nian v. Warden, N. Cent. Corr. Inst.*, 994 F.3d 746, 756-57 (6th Cir. 2021); *Barnes v. Joyner*, 751 F.3d 229, 252-53 (4th Cir. 2014); *Hall v. Zenk*, 692 F.3d 793, 805 (7th Cir. 2012); *Malicoat v. Mullin*, 426 F.3d 1241, 1250 (10th Cir. 2005); *Pyles v. Johnson*, 136 F.3d 986, 992-93 (5th Cir. 1998); *Bibbins v. Dalsheim*, 21 F.3d 13, 16-18 (2d Cir. 1994).

While acknowledging the weight of authority is otherwise, Bomar argues the *Brecht* framework should not apply here for two reasons.  First, he argues that once an extraneous contact with a juror is found to trigger a presumption of prejudice, the error is structural because its effects are "simply too hard to measure."  Mot. to Alter & Amend 8, ECF No. 69 (quoting *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1908 (2017)).  Second, he argues applying *Brecht* is unnecessary because the harmless error analysis is subsumed within the *Remmer* materiality standard.

As to the first argument, although structural errors are not subject to harmless-error review, the Supreme Court has "found an error to be 'structural,' and thus subject to automatic reversal, only in a 'very limited class of cases.'"  *Neder v. United States*, 527 U.S. 1, 8 (1999).  In *United States v. Fumo*, the Third Circuit rejected the argument that "any exposure to potentially prejudicial extraneous information constitutes a 'structural error'" requiring automatic reversal as "entirely unsupported and unpersuasive."  655 F.3d at 307.  Other courts have reached similar conclusions, reasoning that classifying juror exposure to extraneous influence as structural error would be inconsistent with *Remmer*, which held such exposure should be evaluated in terms of prejudice.  *See United States v. Tejada*, 481 F.3d 44, 50 & n.1 (1st Cir. 2007); *United States v. Dutkel*, 192 F.3d 893, 899 n.4 (9th Cir. 1999); *see also Malicoat*, 426 F.3d at 1249-50 (rejecting argument that jury's exposure to extraneous information was structural error); *cf. Olano*, 507 U.S.

11

at 738 (noting the Supreme Court "generally ha[s] analyzed outside intrusions upon the jury for prejudicial impact").  Notably, Bomar does not cite any contrary authority.

As to Bomar's second argument, in *Kyles v. Whitley*, the Supreme Court held that violations of *Brady v. Maryland*, 373 U.S. 83 (1963), are not subject to harmless-error review under *Brecht* because a showing of materiality under *Brady* necessarily establishes actual prejudice under *Brecht*.  514 U.S. 419, 435-36 (1995).  In *Haskell v. Superintendent Greene SCI*, the Third Circuit held *Brecht* also does not apply to perjured-testimony claims, even though the materiality standard for such claims is lower than for *Brady* claims and does not subsume the *Brecht* inquiry.  866 F.3d 139, 147, 150-51 (3d Cir. 2017).  Adopting the approach taken by the Ninth Circuit, the court held:

> *Kyles* suggests that for the three types of due-process violations discussed in *Agurs*[9][—i.e., (1) the government's knowing presentation of or failure to correct false testimony; (2) its failure to provide requested exculpatory evidence; and (3) its failure to volunteer exculpatory evidence never requested—]there is no need to perform a separate harmless-error analysis under *Brecht*.  This is because for these violations the materiality and harmless-error standards merge.  That is, the test for materiality supplies the test for harmlessness and there is no need to look to *Brecht* to supply a harmless-error standard.

*Id.* at 150-51 (internal citations omitted).  Bomar argues the same reasoning should apply to extraneous influence claims because the *Remmer* standard contains its own materiality requirement:  the unrebutted presumption of prejudice.  *Haskell*, however, did not address extraneous influence claims, which are not among the "three types of due-process violations discussed in *Agurs*."  *Id.* at 150.  For this reason, and given both the lack of Third Circuit authority applying *Remmer* in the habeas context and the weight of authority from other circuits, the Court declines to hold that extraneous influence claims are not subject to harmless-error review under *Brecht*.

---

[9] *United States v. Agurs*, 427 U.S. 97 (1976).

Under *Brecht*, a constitutional trial error warrants habeas relief only if "the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). This requires "more than a 'reasonable possibility' that the error was harmful." *Davis v. Ayala*, 576 U.S. 257, 268 (2015) (citation omitted). But if the reviewing court "is in grave doubt" as to whether the error had such an effect, the error "is not harmless." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).[10]

Upon review of the record, the Court has no doubt that juror Mertz's exposure to extraneous information did not have a substantial and injurious effect or influence in determining the jury's verdict in this case for many of the same reasons discussed above. As noted, the record reflects that the existence of a threat toward the jury was mentioned only briefly to a single juror at some unspecified point during the two-week trial. There is no evidence Mertz discussed the threat with any other jurors or that other jurors were aware of it. *See Fumo*, 655 F.3d at 307 ("[T]he fact that only one juror was exposed to a brief verbal summary of the excluded evidence from her coworkers is a compelling consideration against a finding of prejudice.").

While the report of a death threat is information that might be unsettling to an objective typical juror, by Mertz's own account, law enforcement and court personnel kept the sequestered jurors well protected throughout their service, *see* Mertz Decl. ¶ 3, mitigating this concern to some extent. In addition, although the deputy's disclosure of the threat in response to Mertz's question

---

[10] Bomar notes the Commonwealth "has made no effort to demonstrate harmlessness." Mot. to Alter & Amend 9, ECF No. 69. Nevertheless, the Court had discretion to reach the issue sua sponte, as it did in noting, albeit without analysis, that relief would not be warranted under *Brecht*. Mem. 119 n.75, ECF No. 67; *see also Muhammad v. Superintendent Fayette SCI*, No. 19-1905, 2021 WL 3662308, at *3 n.3 (3d Cir. Aug. 18, 2021); *United States v. Faulks*, 201 F.3d 208, 213 (3d Cir. 2000); *see also Rhodes v. Ditmann*, 903 F.3d 646, 665 (7th Cir. 2018). This is an appropriate case in which to reach the issue of harmlessness because, in the Court's view, its resolution is clear.

about the amount of security around the jury was improper, there is no evidence the deputy conveyed anything beyond the fact a threat had been received.  Importantly, there is no evidence he gave Mertz any reason to believe the threat came from Bomar or anyone associated with him, and nothing about the case or the crime would have supported such an inference in any event, given the deputy's statement that the threat came from a gang in Philadelphia.  Absent a reason for an objective typical juror to link the threat to Bomar, there is no basis to conclude the extraneous information here "relate[s] to one of the elements of the case that was decided against the [moving] party."  *Fumo*, 655 F.3d at 307 (first alteration in original) (citation omitted).

In evaluating whether the deputy's comment to Mertz substantially influenced the jury's verdict, the Court may also consider "the power of [any] curative instructions and the strength of the legitimate evidence presented by the State."  *Hall*, 692 F.3d at 807 (alteration in original) (internal quotation marks and citation omitted); *accord Fumo*, 655 F.3d at 307.  Here, both factors reinforce the conclusion that any error was harmless.  As set forth in the Memorandum denying Bomar's habeas petition, the Commonwealth's case against Bomar was compelling.  *See* Mem. 77-78, Mar. 31, 2023, ECF No. 67.  The prosecution presented considerable forensic and other physical evidence linking Bomar to the crime, including highly inculpatory DNA evidence, as well as evidence that he admitted his involvement in the crime to three different witnesses.  *See id.*  And in instructing the jury, the trial court repeatedly cautioned that jurors were to decide the case based solely on the evidence presented at trial.  *See* N.T. 9/30/98 at 148 (instructing jurors "to decide this case upon the facts as you find them, from the testimony and evidence produced here on the witness stand and the law as I give it to you *and from no other source*" (emphasis added)); *id.* at 190-91 (instructing jurors to decide the case "based on the evidence as it was presented from this witness stand and in accordance with the instructions which I've given to you"); *id.* at 192 (instructing

jurors on their duty "to reach a verdict based on the evidence presented during this trial"). The court also instructed the jury to "[t]ake the case as it is" without "speculat[ing] or guess[ing]" why something wasn't asked or brought out, *id.* at 149, and not to let emotion affect their deliberations and verdict, *id.* at 152.

Because the foregoing factors support the Court's conclusion that the alleged error did not have a substantial and injurious effect or influence in determining the jury's verdict, the Court declines to reconsider its alternative ruling based on *Brecht*.

Finally, Bomar asks the Court to reconsider its denial of a certificate of appealability as to this claim. To obtain a certificate of appealability, a habeas petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (holding a petitioner seeking a certificate of appealability "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong").

As the discussion above illustrates, there is considerable disagreement among the circuits as to what constitutes clearly established federal law for purposes of evaluating an extraneous influence claim on habeas review. This disagreement reinforces the Court's view that the state court's resolution of this claim was not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Moreover, in the Court's view, the harmlessness of any error is clear. Because the Court is not persuaded jurists

of reason would find the denial of relief on this claim debatable, the Court declines to reconsider its denial of a certificate of appealability.

For the reasons set forth above, the Court is not persuaded reconsideration of the denial of habeas relief or the denial of a certificate of appealability on Bomar's extraneous influence claim is warranted.  The motion to alter and amend will therefore be denied.

An appropriate order follows.

BY THE COURT:


___/s/ Juan R. Sánchez___
Juan R. Sánchez, J.